# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

CALI-CURL, INC.,

       Plaintiff,

v.

MARIANNA INDUSTRIES, INC.,
MARIANNA BEAUTY HOLDINGS,
INC., COHERE BEAUTY HOLDINGS,
LLC, and COHERE BEAUTY GROUP,
LLC,

       Defendants.

Civil Action No. 3:23-CV-00320-K

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Plaintiff Cali-Curl, Inc.'s ("Cali-Curl") Motion to Remand (the "Motion to Remand"), Doc. No. 17, Marianna Industries, Inc.'s ("Marianna Industries") Response in Opposition to Plaintiff's Motion to Remand and Appendix in support thereof, Doc. Nos. 21–22, Cali-Curl's Reply in Support of its Motion to Remand, Doc. No. 27, Defendants Marianna Beauty Holdings, Inc. ("Marianna Holdings"), Cohere Beauty Holdings, LLC ("Cohere Holdings"), and Cohere Beauty Group, LLC's ("Cohere Group" and, collectively with Marianna Holdings and Cohere Holdings, the "Parent Defendants") Motion to Dismiss Plaintiff's Original Petition (the "Parent Defendants' Motion to Dismiss") and Brief and Appendix in support thereof, Docs. No. 11–12, Marianna Industries' Motion to Dismiss Plaintiff's Original Petition

1

("Marianna Industries' Motion to Dismiss") and Brief and Appendix in support thereof, Docs. No. 9–10, Cali-Curl's Response to Marianna Industries' Motion to Dismiss, Doc. No. 26, Marianna Industries' Reply in Support of Its Motion to Dismiss Plaintiff's Original Petition, Doc. No. 30, Cali-Curl's Motion for Leave to Amend (the "Motion for Leave to Amend"), Doc. No. 25, Defendants' Response to Plaintiff's Motion for Leave to Amend, Doc. No. 29, and Marianna Industries' Unopposed Motion for Extension of Time to Reply to Cali-Curl's Motion to Dismiss Response (the "Motion for Extension of Time to Reply"). Doc. No. 28. The Court **GRANTS** Marianna Industries' Motion for Extension of Time to Reply and has considered Marianna Industries' reply brief together with the Parties' other submissions.

The Court first **DENIES** Cali-Curl's Motion to Remand without prejudice. This case pits Cali-Curl, a Delaware corporation based in Texas, against its Nebraska-based supplier, Nebraska corporation Marianna Industries, and Marianna Industries' Delaware-incorporated parent companies, the Parent Defendants Marianna Holdings, Cohere Holdings, and Cohere Group. Cali-Curl asserts an array of contract, warranty, and tort claims against Marianna Industries and the Parent Defendants because Marianna Industries purportedly undermined the launch of Cali-Curl's new hair care product by failing to use reasonable manufacturing processes and making defective versions of the product. Cali-Curl does not allege that the Parent Defendants are directly liable for Marianna Industries' faulty manufacturing. Cali-Curl also fails to plead facts showing that the Parent Defendants cooperated in the manufacturing or exploited Marianna

2

Industries' separate corporate existence to defraud Cali-Curl, so the Court finds that Cali-Curl improperly joined the Parent Defendants and that remand is improper. The Court **DENIES** the Parent Defendants' Motion to Dismiss as moot because the Court dismisses the Parent Defendants without prejudice as improperly joined Parties.

The Court **DENIES** Marianna Industries' Motion to Dismiss Cali-Curl's initial pleading as moot because Cali-Curl has filed a Motion for Leave to Amend its pleading that the Court **GRANTS** in part and **DENIES** in part without prejudice. Although Cali-Curl has neither a written nor an oral contract with Marianna Industries, Marianna Industries has not challenged Cali-Curl's contract or warranty claims, and, in its proposed amended pleading, Cali-Curl properly pleads these claims in the alternative to its negligence and gross negligence claims. The Court denies Cali-Curl leave to amend its misrepresentation-based claims because Cali-Curl has not explained who defrauded Cali-Curl and where they did it as Federal Rule of Civil Procedure 9(b) requires.

## I.   BACKGROUND

### A. Facts

The Court draws the following facts from Cali-Curl's Original Petition, Doc. No. 1-1 ("Pet."), and Cali-Curl's proposed First Amended Complaint, Doc. No. 25-1 ("FAC"), and assumes that they are true.

Cali-Curl is a young Dallas-based business that sought to develop a "modern perm system" that would provide customers with long-lasting wavy hair. Pet. ¶¶ 5, 17,

21.  The business is incorporated in Delaware and enjoys sophisticated and experienced leadership.  *Id.* ¶¶ 5, 21–24.

In 2017, Cali-Curl initiated collaboration with Marianna Industries, a Nebraska-based manufacturer incorporated in Nebraska, to create Cali-Curl's product.  *Id.* ¶ 25.  Marianna Industries is a wholly-owned subsidiary of Marianna Holdings, a Delaware corporation.  *Id.* ¶¶ 7, 89.  Marianna Industries and Marianna Holdings share a principal place of business, and Marianna Holdings provides Marianna Industries with some insurance, though not enough to cover losses from product defects and recalls.  *Id.* ¶ 89;  FAC ¶ 88.  In 2021, Marianna Industries became an indirect subsidiary of Cohere Group and Cohere Holdings, each a Delaware limited liability company and citizen of Delaware, when a portfolio company of CORE Industrial Partners, a private equity fund, acquired Marianna Holdings.  Pet. ¶ 86; FAC ¶ 90; Doc. No. 1 at 4 n.2.  Like Marianna Holdings, Cohere Group and Cohere Holdings have no employees or operations but guarantee some of Marianna Industries' debts and "likely" file consolidated tax returns and maintain consolidated financial statements with Marianna Industries.  FAC ¶¶ 87–90.  Marianna Industries and the Parent Defendants share three executives, who also comprise the boards of directors for Marianna Industries and Marianna Holdings.  *Id.* ¶ 93.

Early in their collaboration, Marianna Industries gave Cali-Curl a "baseline product," which Cali-Curl modified to meet its needs.  Pet. ¶ 18.  Between 2017 and 2022, Marianna Industries served as Cali-Curl's "contract" manufacturer without a written

contract.  FAC ¶¶ 25–26.  Under an informal arrangement with Cali-Curl, Marianna Industries was to abide by industry standards and operate as a "reasonably prudent" manufacturer, but there was "no negotiation or meeting of the minds" between Cali-Curl and Marianna Industries on "important issues related to risk allocation or damage limitations."  *Id.* ¶¶ 25–26, 33.  Cali-Curl scheduled the launch of the perm product manufactured by Marianna Industries for April 2022, which coincided with an industry event.  Pet. ¶ 26.

At the end of March 2022, Cali-Curl learned that Marianna Industries had acquired 4.5-ounce bottles to contain Cali-Curl's product rather than the 5-ounce bottles Cali-Curl needed.  *Id.* ¶¶ 29–30.  The small bottles lacked sufficient capacity to permit proper shaking and mixing of the chemicals used in the product, but Marianna Industries falsely assured Cali-Curl that it could replicate Cali-Curl's product in the small bottles by adjusting the concentration of chemicals in existing batches of the product and underfilling the bottles.  *Id.* ¶ 30; FAC ¶¶ 32–36.  Although altering the chemistry of existing batches of product is "uncommon," Cali-Curl launched the modified product on schedule in reliance on Marianna Industries' assurance.  Pet. ¶¶ 31–34.

After the product launch, customers informed Cali-Curl that the product caused their hair to break or melt.  *Id.* ¶ 32.  Cali-Curl tested the modified product and learned that its chemical composition did not match Cali-Curl's approved formula.  *Id.* ¶ 33.  Cali-Curl also discovered that Marianna Industries shipped product that failed quality control testing, added an ingredient to some of the product that it was not supposed

to use, and manufactured batches of defective product that leaked from bottles or precipitated and clogged bottle nozzles.  *Id.* ¶ 38.

Cali-Curl recalled its product.  *Id.* ¶ 36.  As a result of its failed product launch, Cali-Curl's projected gross sales fell from nearly $32 million to $1.5 million for the twelve months beginning in April 2022, and its projected net operating profit over that span fell from a gain of $4.5 million to a loss of $2.3 million.  *Id.* ¶¶ 45–46.

### B. Procedural History

On January 6, 2023, Cali-Curl filed an Original Petition in the 101st Judicial District Court of Dallas County seeking damages from Marianna Industries for harm to Cali-Curl caused by Marianna Industries' allegedly improper manufacturing of Cali-Curl's product and its allegedly false assurances to Cali-Curl that it could properly manufacture the product in 4.5-ounce bottles.  *Id.* at 30.  Cali-Curl asserted that Marianna Industries was (1) negligent or (2) grossly negligent in its manufacturing, that Marianna Industries' manufacture of defective product (3) breached an implied contract with Cali-Curl and (4) breached an express warranty and an implied warranty of fitness to Cali-Curl, and that Marianna Industries' false assurances constituted (5) fraud, (6) negligent misrepresentation, and (7) a deceptive trade practice.  *Id.* ¶¶ 48–85.  Cali-Curl also sought declaratory relief.  *Id.* ¶¶ 86–87.

Cali-Curl additionally sought relief from the Parent Defendants on three theories.  *Id.* ¶¶ 88–97.  Cali-Curl asserted (1) that the Parent Defendants are liable for Marianna Industries' obligations on a veil piercing theory because they are "alter egos,"

or extensions, of Marianna Industries, (2) that the Parent Defendants aided and abetted Marianna Industries' tortious conduct, and (3) that the Parent Defendants are responsible for Marianna Industries' negligence- and misrepresentation-based torts because they engaged in a joint enterprise with Marianna Industries to "work to manufacture" product for Cali-Curl. *Id.*

On February 10, 2023, Marianna Industries removed Cali-Curl's suit to this Court, where it asserted that Cali-Curl had improperly joined the non-diverse Parent Defendants whose presence would otherwise prevent the Court from exercising jurisdiction. Doc. No. 1. About one month later, Marianna Industries moved to dismiss the claims against it for failure to state a claim. Doc. No. 9. The Parent Defendants simultaneously moved to dismiss the claims against them for lack of personal jurisdiction and for failure to state a claim. Doc. No. 11. Cali-Curl subsequently moved to remand the suit to state court. Doc. No. 17.

While the Parties' motions were pending, Cali-Curl moved for leave to amend its Original Petition. Doc. No. 25. Cali-Curl's proposed First Amended Complaint abandons Cali-Curl's deceptive trade practices claim and advances two new theories of liability against the Parent Defendants. FAC at 21; *id.* ¶¶ 87–94. Cali-Curl contends that the Parent Defendants are liable for Marianna Industries' obligations either because all Defendants are under the control of their shared officers or because all Defendants are under the common control of CORE Industrial Partners. FAC ¶¶ 87–94. Cali-Curl's proposed amended pleading otherwise retains the allegations set forth in

Cali-Curl's Original Petition, supplemented with allegations describing, among other things, Cali-Curl's supply arrangement with Marianna Industries, Marianna Industries' assurances to Cali-Curl about modifying Cali-Curl's product for use in small bottles, the personnel and services Marianna Industries shares with one or more Parent Defendants, and the operations Defendants coordinate among themselves. *E.g.*, *id.* ¶¶ 26, 32–33, 87–94.

## II.   CALI-CURL'S MOTION TO REMAND

The Court begins by holding that it has jurisdiction to decide this case. Cali-Curl's Motion to Remand challenges the Court's subject matter jurisdiction over cases between parties that are citizens of different states on the basis that Cali-Curl sued three Defendants—the Parent Defendants—who share its Delaware citizenship. Doc. No. 17 at 5. Cali-Curl contends that it properly sued the Parent Defendants because they are liable for Marianna Industries' alleged wrongdoing. *Id.* at 17–24. The Parent Defendants' Motion to Dismiss challenges the Court's personal jurisdiction over the Parent Defendants on the basis that they have no connection to the state of Texas, where the Court sits, and are not responsible for the conduct of Marianna Industries, who does. Doc. No. 11 at 8–9. Since the Parties' jurisdictional motions raise similar questions about the propriety of attributing Marianna Industries' acts to the Parent Defendants, the Court follows common practice and first addresses Cali-Curl's Motion to Remand challenging the Court's subject matter jurisdiction. *See Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018) (noting "general

expectation" that courts address subject matter jurisdiction before personal jurisdiction).  The Court concludes that it has subject matter jurisdiction because Cali-Curl improperly joined the Parent Defendants, so the Court dismisses the claims against the Parent Defendants without prejudice and denies the Parent Defendants' Motion to Dismiss the claims against them as moot.

## A. Legal Standard

The Court has diversity jurisdiction over cases removed from state court where the properly joined defendants are citizens of different states than the plaintiffs and the matter in controversy exceeds the value of $75,000.   28 U.S.C. §§ 1332(a), 1441(a).  A plaintiff improperly joins a defendant who shares the plaintiff's citizenship by committing fraud in the pleading of jurisdictional facts or by joining the defendant where there is no reasonable basis for the Court to predict that the plaintiff might recover against the defendant.  *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).  The Court typically determines whether there is a reasonable basis for recovery by assessing whether the plaintiff's claims against the defendant meet federal pleading standards, meaning that they contain "enough facts to state a claim to relief that is plausible on its face."  *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016) (citation omitted).  In assessing the plaintiff's pleading, the Court accepts the plaintiff's factual allegations as true but does not accept the plaintiff's legal conclusions as true.  *Wolf v. Deutsche Bank Nat'l Tr. Co.*, 745 F. App'x 205, 208 (5th Cir. 2018).  The Court construes ambiguities in state

law, including the state choice of law principles the Court must apply in diversity ac-

tions, in favor of the plaintiff. *Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d

646, 653–56 (S.D. Tex. 2003) (Rosenthal, J.). If the facts taken as true are "merely

consistent with [the] defendant's liability" under applicable law, they stop "short of

the line between possibility and plausibility of entitlement to relief," and the Court will

dismiss the claims against the defendant. *Carrillo Funeral Directors, Inc. v. Ohio Sec. Ins.*

*Co.*, 2017 WL 5070376, at *4 (N.D. Tex. Nov. 3, 2017) (Fish, J.) (quoting *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009)). The Court may also conduct a "summary inquiry"

into facts beyond the pleadings, but only if the facts are, discrete, undisputed, and

defeat the plaintiff's claim. *Hicks v. Martinrea Auto. Structures (USA), Inc.*, 12 F.4th 511,

516 (5th Cir. 2021).

### B. Materials Considered

The Court resolves Cali-Curl's Motion to Remand based on Cali-Curl's Original

Petition and its proposed First Amended Complaint, except for the portions of the

proposed First Amended Complaint that assert veil piercing theories of liability absent

from the Original Petition. The Court agrees with the Parties that it can decide the

Motion to Remand on the pleadings without a summary inquiry into evidence the Par-

ties have presented. Doc. No. 17 at 16; Doc. No. 21 at 25.

The Court also agrees with Defendants that the Court generally cannot consider

pleadings amended after the removal of a suit from state court in deciding whether a

plaintiff has improperly joined a defendant. Doc. No. 29 at 12; *Cavallini v. State Farm*

*Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).  The Court disagrees that the general rule precludes consideration of Cali-Curl's First Amended Complaint in its entirety.  Doc. No. 29 at 12–13.  The Court may consider amended allegations that clarify claims pled in the pre-removal Original Petition so long as it does not consider claims or theories of relief not pled in the Original Petition.  *Compare Bukowski v. Liberty Ins. Corp.*, 2022 WL 1625173, at *5 (W.D. Tex. May 20, 2022) (considering allegations of fraud sharpened post-removal to satisfy federal pleading standards), *with Akerblom v. Ezra Holdings Ltd.*, 509 F. App'x 340, 344–46 (5th Cir. 2013) (refusing to consider tort claims and joint enterprise and alter ego theories of liability "raised for the first time after removal"), *overruled in part on other grounds by Int'l Energy Ventures*, 818 F.3d 193, *and Ayala v. Enerco Grp., Inc.*, 569 F. App'x 241 (5th Cir. 2014) (refusing to consider theory of "handling and merchandising" negligence because pre-removal pleading alleged only "packaging and shipping" negligence).

Many of Cali-Curl's revised allegations against the purportedly improperly joined Parent Defendants in its proposed First Amended Complaint clarify Cali-Curl's pre-removal pleading, and the Court will consider them.  Cali-Curl adds details about the Parent Defendants' operations and the officers, directors, and services that the Parent Defendants allegedly share with Marianna Industries.  FAC at 27–30.  These details are fairly within the scope of Cali-Curl's pre-removal veil piercing theory, which posited that the Parent Defendants are liable for Marianna Industries' obligations because they are alter egos of Marianna Industries that control Marianna Industries through

overlapping operations and personnel. *Id.*; *cf. De La Hoya v. Coldwell Banker Mex., Inc.*, 125 F. App'x 533, 537–38 (5th Cir. 2005) (considering post-removal evidence bolstering single business enterprise theory of liability because allegations referring to defendants collectively and charging them with "joint enterprise" liability fairly raised the theory).

The same is not true of Cali-Curl's proposed new veil piercing theories. The Court will not consider the First Amended Complaint to the extent Cali-Curl asserts that the Court should pierce Marianna Industries' corporate veil because Marianna Industries is under the control of the Parent Defendants' officers or, with the Parent Defendants, under the common control of CORE Industrial Partners. There is no trace of either of these theories in Cali-Curl's pre-removal pleading. FAC at 27–30.

### C. Discussion

After review of Cali-Curl's Original Petition and proposed First Amended Complaint, the Court concludes that Cali-Curl improperly joined the Parent Defendants because neither pleading states a claim for relief against a Parent Defendant that survives a Rule 12(b)(6)-type analysis. Cali-Curl's pleadings share three theories of the Parent Defendants' liability, all of which are at least partially derivative of the alleged liability of their subsidiary, Marianna Industries. The first theory of liability, a veil piercing theory, fails because Cali-Curl's factual allegations do not show that Marianna Industries' separate corporate existence defrauded Cali-Curl. FAC ¶¶ 85–94. The second and third theories of liability, for aiding and abetting and conduct in a joint

enterprise, respectively, rest on conclusory allegations from which the Court cannot infer that the Parent Defendants may be liable. *Id.* ¶¶ 96–98–101.

### 1. *Veil Piercing Liability*

Cali-Curl has not adequately pled its veil piercing theory because it fails to plead that it suffered from fraud that requires the Court to pierce Marianna Industries' corporate veil. Cali-Curl's theory is that each Parent Defendant is an alter ego of Marianna Industries, which exists to carry out the Parent Defendant's purposes and fraudulently shield the Parent Defendant from claims Marianna Industries. FAC ¶¶ 85–94. Among other things, Cali-Curl alleges that the Parent Defendants share officers, directors, and services with Marianna Industries, that the shared personnel oversee Cali-Curl on behalf of the Parent Defendants, and that Cali-Curl and the Parent Defendants coordinate some of their operations. *Id.* In its briefing, Cali-Curl acknowledges that Marianna Holdings is the only Parent Defendant that owns an interest in Marianna Industries but asserts that there is "absolute" unified control up and down the "corporate ladder" that includes Defendants. Doc. No. 17 at 13–14.

Nebraska law governs Cali-Curl's request to pierce Marianna Industries' corporate veil because Texas choice of law principles, to which this Court looks in actions within its diversity jurisdiction, require the Court to use veil piercing standards established by the jurisdiction of Marianna Industries' incorporation. *Clapper v. Am. Realty Invs., Inc.*, 2018 WL 3868703, at *18 (N.D. Tex. Aug. 14, 2018) (Fitzwater, J.); Tex. Bus. Orgs. Code §§ 1.102, 1.104. A Nebraska corporation is distinct from the entities

13

who own and manage it, and the Court may hold the entities liable for the corporation's obligations only if the entities "actual[ly] control" the corporation and exercise their "control to commit a fraud or other wrong in contravention of the plaintiff's rights." *Wolf v. Walt*, 247 Neb. 858, 866 (1995) (citation omitted).  The Supreme Court of Nebraska has not decided whether the "corporate veil may be pierced to reach a non-shareholder," but the Court assumes that it can.  *407 N 117 St., LLC v. Harper*, 314 Neb. 843, 850 (2023).  The Court evaluates Cali-Curl's claim that Defendants have defrauded "creditors or victims of wrongdoing of their ability to collect" by separating Marianna Industries from the Parent Defendants in light of four non-exclusive factors Nebraska courts use to identify fraud: (1) whether Marianna Industries was grossly inadequately capitalized at its inception, (2) whether Marianna Industries was insolvent when it incurred liability to Cali-Curl, (3) whether the Parent Defendants diverted corporate funds or assets to their own or other improper uses, and (4) whether Marianna Industries is a "mere façade for the personal dealings" of the Parent Defendants and its operations "are carried on by the [Parent Defendants] in disregard of the corporate" form.  *Christian v. Smith*, 276 Neb. 867, 883 (2008); *see also KM Ag Servs., Inc. v. ASI Ag Servs., Inc.*, 2016 WL 7209672, at *2 (D. Neb. Dec. 12, 2016) (applying *Christian*, a contract case, to a tort claim); FAC ¶ 93.

Assuming without deciding that Cali-Curl sufficiently pleads that the Parent Defendants actually control Marianna Industries, Cali-Curl's allegations give no indication that the Parent Defendants used Marianna Industries' separate existence to

14

defraud Cali-Curl.  Cali-Curl alleges that it is a sophisticated entity boasting an "executive team with significant and world class expertise in the beauty product industry" that entered a significant supply arrangement with Marianna Industries.  FAC ¶¶ 22–26.  Although Marianna Industries allegedly failed to perform under the arrangement, Cali-Curl does not contend that the Parent Defendants led Cali-Curl to believe that they would be involved in supplying Cali-Curl or that the Parent Defendants' assets were backing Marianna Industries.  *Id.* ¶ 77; *RSG, Inc. v. Sidump'r Trailer Co.*, 2012 WL 4486304, at *7 (D. Neb. Sept. 27, 2012) (refusing to pierce entity's veil in dispute over "arms-length transaction" between sophisticated parties who allocated risks between themselves).

Review of the factors Nebraska courts consider in evaluating allegations of fraud confirm that none support Cali-Curl's claim.  Cali-Curl does not seriously contend that any of the first three factors favor piercing Marianna Industries' corporate veil.  Cali-Curl does not allege that the Parent Defendants improperly diverted funds from Marianna Industries to evade obligations to Cali-Curl.  Cali-Curl also fails to plead that Marianna Industries undertook its obligations to Cali-Curl knowing it could not discharge them.  Cali-Curl does not allege that Marianna Industries was insolvent when it undertook the obligations.  Cali-Curl does allege that it is "unclear" whether Marianna Industries currently has "sufficient capital or assets to satisfy any judgment Cali-Curl might obtain," FAC ¶ 91, but "[i]nadequate capitalization is measured at the time of [corporate] formation," not the time of litigation.  *S. Lumber*, 229 Neb. at 257–58.

15

Taken as true, Cali-Curl's allegations regarding the last factor—whether Marianna Industries is a façade for the Parent Defendants—do not show that any blurring of the identities of Marianna Industries and the Parent Defendants misled Cali-Curl. *See Timm Grandview, LLC v. AmGuard Ins. Co.*, 2022 WL 4017946, at *7 (D. Neb. Sept. 2, 2022) (refusing to pierce corporate veil where plaintiff could not show that alleged operation of parent and subsidiary as alter egos caused injustice to plaintiff).  The Parent Defendants' sharing of personnel and services is not fraudulent.  *Glob. Credit Servs. v. AMISUB*, 244 Neb. 681, 689–90 (1993).  Their coordination of operations is not fraudulent, either.  *Certified Moving & Storage Co., LLC v. Applied Underwriters, Inc.*, 2022 WL 1304410, at *5 (D. Neb. May 2, 2022) (dismissing veil piercing claim against affiliates that cooperated in promoting an investment scheme).  While Cali-Curl alleges that Marianna Industries held "itself out as just one entity," the basis for this allegation is a statement from an unspecified speaker describing Marianna Holdings as a "full-service custom manufacturer, formulator and distributor of client-tailored hair care" and other products.  FAC ¶ 85.  Cali-Curl appears to believe that this statement is misleading because it better describes Marianna Industries, a manufacturer.  Doc. No. 17 at 18.  The Court disagrees.  The statement does not indicate that Marianna Holdings is interchangeable with any particular manufacturer, and Cali-Curl does not allege that it understood the statement to so indicate when it transacted with Marianna Industries.  Had the statement misled Cali-Curl about the relationship between Marianna Industries and Marianna Holdings, Cali-Curl's allegations still would not advance Cali-

Curl's veil piercing theory absent identification of the speaker.  The Court cannot pierce the veil of a Nebraska corporation to prevent fraud unless the person to be held liable for the corporation's obligations was at fault in perpetrating the fraud.  *Slusarski v. Am. Confinement Sys., Inc.*, 218 Neb. 576, 581 (1984).

### 2. *Aiding and Abetting Liability*

Turning to Cali-Curl's second theory of the Parent Defendants' liability, the Court concludes that there is no reasonable basis for Cali-Curl to recover against the Parent Defendants for aiding and abetting even if aiding and abetting is a valid legal theory.  Cali-Curl's aiding and abetting theory rests on two, largely conclusory allegations.  Cali-Curl contends that the Parent Defendants actually or constructively knew that Marianna Industries negligently or grossly negligently operated its manufacturing process for Cali-Curl product and negligently or fraudulently misrepresented to Cali-Curl its ability to properly make Cali-Curl product in 4.5-ounce bottles.  FAC ¶ 98. With that knowledge, the Parent Defendants allegedly furthered their own financial interests by assisting and encouraging Marianna Industries in its purportedly tortious conduct "through the actions of their shared officers, capital, and corporate resources." *Id.*

Because Cali-Curl's aiding and abetting theory depends on matters beyond the internal affairs of Marianna Industries, the Court must apply the law of the jurisdiction with the most significant relationship to the theory.  *Highland Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc.*, 2008 WL 3925272, at *3 (N.D. Tex. Aug. 27, 2008)

(Boyle, J.), *aff'd*, 377 F. App'x 422 (5th Cir. 2010).  The Parties' briefs ask the Court to apply Nebraska or Texas law.  *See, e.g.*, Doc. No. 11 at 31; Doc. No. 17 at 23.  Under either state's law, Cali-Curl's aiding and abetting theory fails.

Measured against Nebraska substantive law, Cali-Curl's allegations lack sufficient factual content to state an aiding and abetting claim.  Under Nebraska law, "civil abetting liability arises for 'one who counsels, commands, directs, advises, assists, or aids and abets another individual in commission of a wrongful act or tort.'"  *KD v. Douglas Cnty. Sch. Dist. No. 001*, 1 F.4th 591, 600 (8th Cir. 2021) (quoting *Bergman v. Anderson*, 226 Neb. 333, 411 (1987)), *cert. denied*, 142 S. Ct. 485 (2021).  In its First Amended Complaint, Cali-Curl recites the elements of aiding and abetting liability, but Cali-Curl's only factual allegations supporting its contention that the Parent Defendants assisted Marianna Industries in its purportedly tortious conduct are its allegations that the entities' shared officers took unspecified actions and that the Parent Defendants provided Marianna Industries with capital and "corporate resources."  FAC ¶ 98. The Court cannot plausibly infer from Cali-Curl's vague allegations that the Parent Defendants are liable for aiding and abetting Marianna Industries' specific tortious conduct.  *See Marquis Energy, LLC v. Rayeman Elements, Inc.*, 2022 WL 676541, at *5 (D. Neb. Mar. 7, 2022) (dismissing "largely inchoate" aiding and abetting claim based on "little more than labels and unsupported legal conclusions").  Cali-Curl does not explain how the actions of the Parent Defendants' officers or the resources supplied by the Parent Defendants to Marianna Industries contributed to that conduct.

Measured against Texas substantive law, Cali-Curl's aiding and abetting theory fails for the same reason.  For nearly thirty years, the Supreme Court of Texas has expressly left open the question whether a valid civil claim for aiding and abetting exists, but the claim, if recognized, requires a defendant to substantially assist another in the other's wrongdoing.  *See Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996); *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017); *Reynolds v. Sanchez Oil & Gas Corp.*, 2023 WL 3311116, at *9–10 (Tex. App.—Houston [1st Dist.] May 9, 2023, no pet.).  The Parties debate at length whether civil aiding and abetting is a valid claim, and there is reason to doubt that the likelihood the claim exists is sufficient to warrant remand.  *E.g.*, Doc. No. 17 at 22–24; Doc. No. 21 at 23–25; Doc. No. 27 at 9–10.  A party may not obtain a remand by raising the "'mere theoretical possibility'" that a "cause of action exists" against a nondiverse party.  *Marketfare Annunciation, LLC v. United Fire & Cas. Co.*, 2007 WL 837202, at *1 (E.D. La. Mar. 15, 2007) (quoting *Smallwood*, 385 F.3d at 573 n. 9); *Jack v. Evonik Corp.*, 79 F.4th 547, --- (5th Cir. 2023) (finding improper joinder where plaintiff relied on tort theory unrecognized by Louisiana courts).  The Texas Courts of Appeals have repeatedly refused to recognize a claim for aiding and abetting.  *See, e.g.*, *Hampton v. Equity Tr. Co.*, 607 S.W.3d 1, 5 (Tex. App.—Austin 2020, pet. denied); *AmWins Specialty Auto, Inc. v. Cabral*, 582 S.W.3d 602, 611 (Tex. App.—Eastland 2019, no pet.); *Solis v. S.V.Z.*, 566 S.W.3d 82, 103 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).  Opinions remanding potential aiding and abetting claims have drawn on an analogy between

19

recognized claims for knowing participation in breaches of fiduciary duty and unrecognized claims for aiding and abetting that the Fifth Circuit has since questioned. *Compare Woloshen v. State Farm Lloyds*, 2008 WL 4133386, at *3 (N.D. Tex. Sept. 2, 2008) (Fitzwater, J.) (remanding based on analogy with fiduciary duty cases), *with In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 781 (5th Cir. 2018) (holding that fiduciary duty cases do not "speak[], let alone clearly, to the question" of aiding and abetting liability). Despite the Parties' extensive briefing, they do not fully address the issues identified by the Court, so the Court does not decide whether a properly-pled aiding and abetting claim could survive an improper joinder analysis. At minimum, Cali-Curl's conclusory allegations are insufficient to state a claim. *See Sazy v. DePuy Spine, LLC*, 2014 WL 4652839, at *4 (N.D. Tex. Sept. 18, 2014) (Lindsay, J.) (finding defendant improperly joined where court could not discern how defendant's alleged conduct assisted co-defendant in allegedly wrongful conduct).

### 3. *Joint Enterprise Liability*

Like its aiding and abetting allegations, Cali-Curl's allegations in support of its third, joint enterprise, theory of the Parent Defendants' liability are conclusory and fail to establish a reasonable basis for predicting that Cali-Curl could recover against the Parent Defendants. In its joint enterprise allegations, Cali-Curl contends that the Parent Defendants and Marianna Industries agreed to "work to manufacture product for Cali-Curl." FAC ¶ 100. The Defendants allegedly "shared the same purpose" in this work, had a "community of financial or pecuniary interest," and had an "equal right to

control and direct" the work.  *Id.*  Cali-Curl concludes that the Parent Defendants are liable for Marianna Industry's purportedly negligent operation of its manufacturing process for Cali-Curl product and Marianna Industries' purported misrepresentations to Cali-Curl about Marianna Industries' ability to produce Cali-Curl product in 4.5-ounce bottles.  *Id.* ¶ 101.

The Parent Defendants represent that the Texas law of joint enterprise liability is "identical" with the Nebraska law of joint enterprise liability, and the Parties rely almost exclusively on Texas law, so the Court will evaluate Cali-Curl's joint enterprise theory under Texas law.  *Taylor v. Interstate Hyundai, Inc.*, 2018 WL 1548898, at *5 (W.D. La. Mar. 5, 2018), *rep.* & *rec. adopted*, 2018 WL 1541992 (W.D. La. Mar. 29, 2018).  Texas law imposes joint enterprise liability on a person for the tortious acts of fellow members of a group if the person (1) enters an agreement with members of the group, (2) shares a common purpose to be carried out by the group, (3) shares a community of pecuniary interest in the purpose with the members of the group, and (4) enjoys an "equal right to a voice in the direction of the enterprise, which gives an equal right of control."  *David L. Smith* & *Assocs., L.L.P. v. Stealth Detection, Inc.*, 327 S.W.3d 873, 878 (Tex. App.—Dallas 2010, no pet.) (quoting *Shoemaker v. Whistler's Estate*, 513 S.W.2d 10, 16–17 (Tex. 1974)).

Cali-Curl's allegations with respect to the second and fourth elements of its jointer enterprise theory are in tension with the remainder of its pleading.  The Parent Defendants might share the purpose of "work[ing] to" manufacture Cali-Curl product

with Marianna Industries despite purportedly being "mere shell entities that have no employees and no actual operations," but Cali-Curl fails to allege how the Parent Defendants are involved in carrying out that purpose.  FAC ¶¶ 87, 100.  Cali-Curl also fails to reconcile its allegation that Marianna Industries is a "mere tool or business conduit" of one or more Parent Defendants with its allegation that the Defendants have an equal right to control and an equal voice in their purportedly common enterprise.  *Id.* ¶¶ 85, 100.  *See Burchinal v. PJ Trailers-Seminole Mgmt. Co., LLC,* 372 S.W.3d 200, 216 (Tex. App.—Texarkana 2012, no pet.) (finding that entities lacked an equal voice in an enterprise despite their common owners because some had "overriding control" over another).

Assuming Cali-Curl can overcome the internal tensions in its pleading, Cali-Curl fails to allege facts showing that Defendants shared a community of pecuniary interest in a joint enterprise.  Cali-Curl does not allege what sort of pecuniary interest the Parent Defendants had in working to manufacture product for Cali-Curl, and without that information the Court cannot find that the Parent Defendants are plausibly liable on a joint enterprise theory.  Pecuniary interests that amount to "indirect, potential financial interests" or that members of an enterprise share according to their respective contributions to the enterprise cannot support joint enterprise liability.  *St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 532 (Tex. 2002); *see also Air Liquide Mexico S. de R.L. de C.V. v. Talleres Willie, Inc.,* 2015 WL 8763961, at *4–5 (S.D. Tex. Dec. 15, 2015) (dismissing claim based on conclusory community of interest allegations that conflicted with

22

allegations that parties received benefits based on their respective contributions to the enterprise).  At most, the Court can infer from Cali-Curl's pleading that the Parent Defendants would benefit from Marianna Industries manufacturing product for Cali-Curl because their investment in Marianna Industries might appreciate in value as a result.  Even if Defendants share that benefit without special distinctions in their re-turns, Cali-Curl's pleading fails to set forth a reasonable basis for recovery.  The gener-alized interest of common owners in the financial success of the entities they own is too indirect to constitute a community of pecuniary interest.  *O'Mara v. Almeria Ship-ping Corp.*, 2015 U.S. Dist. LEXIS 150950, at *11 (S.D. Tex. June 11, 2015) (rejecting community of interest allegations based on shared ownership and officers under an improper joinder analysis); *Stealth Detection, Inc.*, 327 S.W.3d at 878 (rejecting com-munity of interest allegations based on shared ownership, directors, officers, real estate, branding, and assets); *Burchinal*, 372 S.W.3d at 216 (rejecting community of interest allegations based on shared ownership and officers); *Seidler v. Morgan*, 277 S.W.3d 549, 556 (Tex. App.—Texarkana 2009, pet. denied) (rejecting community of interest alle-gations based on shared ownership).

### D. Conclusion

Because there is no reasonable basis for any of Cali-Curl's theories of recovery against the nondiverse Parent Defendants, the Court **DENIES** Cali-Curl's Motion to Remand and **DISMISSES** Cali-Curl's claims against the Parent Defendants without prejudice.  The Court's dismissal of the claims against the Parent Defendants moots

the Parent Defendants' Motion to Dismiss the claims, and the Court **DENIES** the

Parent Defendants' Motion to Dismiss accordingly.

### III.   CALI-CURL'S MOTION FOR LEAVE TO AMEND

Having dismissed the claims against the Parent Defendants, the Court turns to

Cali-Curl's Motion for Leave to Amend its pleading.

#### A. Legal Standard

The Court permits amendment of pleadings freely when justice so requires.  Fed.

R. Civ. P. 15(a).  The Court will deny amendment as futile if the amended pleading

would fail to meet the "same standard of legal sufficiency as applies under [Federal

Rule of Civil Procedure] 12(b)(6)." *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 379

(5th Cir. 2014) (citation omitted). A claim fails to satisfy Rule 12(b)(6) if the plaintiff

does not plead facts sufficient to make the claim plausible.  *City of Clinton v. Pilgrim's

Pride Corp.*, 632 F.3d 148, 155 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 679).   In

assessing the plausibility of its proposed amended claims, the Court assumes that Cali-

Curl's factual allegations are true but does not assume that its legal conclusions are

true.  *Arroyo v. Oprona, Inc.*, 736 F. App'x 427, 430 (5th Cir. 2018).  The Court requires

Cali-Curl to plead fraud "with particularity" under Federal Rule of Civil Procedure 9(b).

*United States ex rel. Miniex v. Hous. Hous. Auth.*, 2023 WL 6174416, at *6–7 (5th Cir.

Sept. 22, 2023).  Because Cali-Curl concedes that its negligent misrepresentation claim

is "based on the same conduct [as] and is co-extensive with [its] fraud claim," Rule 9(b)

applies to both claims.  Doc. No. 16 at 17 n.1; *Benchmark Elecs. v. J.M. Huber Corp.*, 343

F.3d 719, 723 (5th Cir. 2003).  The Parties assume that the substantive law of Texas applies to Cali-Curl's tort claims, and the Court joins in their assumption.  *E.g.*, Doc. No. 9 at 11; Doc. No. 26.

### B. Discussion

The Court **GRANTS** Cali-Curl's Motion for Leave to Amend in part and **DE-NIES** it in part without prejudice.  Because the Court has dismissed the claims against the Parent Defendants, the Court **DENIES** without prejudice Cali-Curl's Motion for Leave to Amend to the extent Cali-Curl proposes to amend its allegations against the Parent Defendants.  In its Motion for Leave to Amend, Cali-Curl also abandons its deceptive trade practices claim against Marianna Industries, so the Court **DISMISSES** the deceptive trade practices claim without prejudice.  *See Akerblom*, 509 F. App'x at 345.  Marianna Industries also opposes Cali-Curl's Motion for Leave to Amend on the basis that Cali-Curl's proposed amendments to its negligence, gross negligence, negligent misrepresentation, and fraud claims are futile.  Doc. No. 29 at 9–10.  The Court agrees with Marianna Industries' that Cali-Curl has not pled its negligent misrepresentation and fraud claims with the particularity required by Federal Rule of Civil Procedure 9(b) and **DENIES** Cali-Curl's Motion for Leave to Amend without prejudice to the extent Cali-Curl proposes to amend these claims.  *Id.* at 23–24.  The Court disagrees with Marianna Industries' contention that the economic loss rule bars Cali-Curl's negligence and gross negligence claims and **GRANTS** Cali-Curl's Motion for Leave to Amend to the extent Cali-Curl proposes to amend its negligence and gross negligence

25

claims. Marianna Industries does not oppose Cali-Curl's Motion for Leave to Amend insofar as Cali-Curl seeks to amend its warranty and contract claims, so the Court also **GRANTS** Cali-Curl's Motion for Leave to Amend to the extent Cali-Curl proposes to amend its warranty and contract claims against Marianna Industries. *Id.* at 25–26.

Because the Court grants Cali-Curl's Motion for Leave to Amend in part, Marianna Industries' Motion to Dismiss Cali-Curl's unamended pleading is moot, and the Court **DENIES** it accordingly.

### C. Pleading with Particularity

Cali-Curl fails to plead its negligent misrepresentation and fraud claims with the particularity required by Federal Rule of Civil Procedure 9(b). While the standard of particularity under Rule 9(b) depends on the facts of a case, at "minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs.*, 343 F.3d at 724 (citation omitted).

In its proposed First Amended Complaint, Cali-Curl alleges that Marianna Industries misrepresented its ability to prepare a proper perm solution for use in 4.5-ounce bottles, but Cali-Curl fails to allege where Marianna Industries' purported misrepresentations occurred. FAC ¶¶ 31–32. Rule 9(b) requires Cali-Curl to provide at least some description of where Marianna Industries made the misrepresentations. *Dylon v. Bank of Am., N.A.*, 2017 WL 2266938, at *10 (N.D. Tex. Apr. 28, 2017)

(Horan, M.J.), *rep. & rec. adopted*, 2017 WL 2255195 (N.D. Tex. May 23, 2017) (Lynn C.J.).

Cali-Curl's generic attribution of the purported misrepresentations to Marianna Industries also falls short of the Rule 9(b) pleading standard.  FAC ¶¶ 31–32.  Courts in this Circuit often hold that Plaintiffs fail to satisfy Rule 9(b) by alleging that a corporation, rather than a specific individual representing the corporation, made a fraudulent misrepresentation.  *See, e.g.*, *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (rejecting pleading that attributed misrepresentation to corporation); *James v. Wells Fargo Bank, N.A.*, 533 F. App'x 444, 447–48 (5th Cir. 2013) (per curiam) (same).  That practice enables corporations to meet allegations of fraud and protects the reputations of innocent employees who might otherwise be suspected of wrongdoing.  If the identity of the individual who made the misrepresentation is peculiarly within the knowledge of the corporation, the Court may relax the Rule 9(b) standard, but Cali-Curl should know which individuals at Marianna Industries allegedly made direct misrepresentations to Cali-Curl—on which Cali-Curl purportedly relied—about critical operational issues.  FAC ¶¶ 70, 74; *see Halprin v. FDIC*, 2016 WL 5718021, at *4 (W.D. Tex. Sept. 30, 2016) (citing *Gonzalez v. Bank of Am. Ins. Services, Inc.*, 454 F. App'x 295, 298 n.3 (5th Cir. 2011) (per curiam)) (refusing to relax Rule 9(b) standard where the identities of employees who made misrepresentations "should be known to Plaintiffs").

### D. Economic Loss Rule

The Court rejects Marianna Industries' contention that the economic loss rule bars Cali-Curl's negligence and gross negligence claims.  The economic loss rule prevents a contracting party from recovering purely economic losses in tort for harm its counterparty causes solely to the subject matter of their contract.  *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).  At least where an injured party has a contract- or warranty-based remedy against some person, the economic loss rule also prevents the injured party from recovering purely economic losses caused by a defective product on strict liability or negligence theories.  *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 80 (Tex. 1977) (strict liability); *Pugh v. Gen. Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 94 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (negligence); *see also Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 419 (Tex. 2011) (declining to decide "whether purely economic losses may ever be recovered in negligence or strict liability cases").

The economic loss rule does not bar Cali-Curl's negligence-based claims merely because Cali-Curl pleads that Marianna Industries breached a contract with and warranties to Cali-Curl.  Doc. No. 29 at 24–25.  Although Cali-Curl alleges it entered a contract with Marianna Industries for the supply of perm product and received warranties from Marianna Industries with respect to the product, Cali-Curl asserts its contract and warranty claims in the alternative to its negligence-based claims.  Doc. No. 26 at 15; FAC ¶ 78.  Marianna Industries, which does not concede that it issued valid

28

warranties to Cali-Curl, contends that pleading in the alternative is unnecessary be-cause it has not challenged the validity of its supply contract with Cali-Curl by moving to dismiss Cali-Curl's contract claim.  Doc. No. 30 at 8 n.2.  The Court disagrees.  The Court will not deny Cali-Curl the usual privilege of pleading its warranty, contract, and negligence-based claims in the alternative while Marianna Industries has implicitly re-served the right to challenge the validity of the warranties and the contract at a later stage of the litigation.  *See Occidental Petro. Corp. v. Wells Fargo Bank, N.A.*, 573 F. Supp. 3d 1161, 1171 (S.D. Tex. 2021) (Rosenthal, J.) (refusing to dismiss tort claim pled in the alternative to contract claim); *Galyean v. Guinn*, 2022 WL 15527769, at *7 (N.D. Tex. Oct. 24, 2022) (Pittman, J.) (same where parties had not stipulated to validity of contract).

## IV.   CONCLUSION

The Court **DENIES** Cali-Curl's Motion to Remand and **DISMISSES** the claims against the Parent Defendants without prejudice.  The Court **DENIES** the Parent De-fendants' Motion to Dismiss as moot.  The Court **GRANTS** in part and **DENIES** in part Cali-Curl's Motion for Leave to Amend.  Cali-Curl may make only its proposed amendments to its negligence, gross negligence, warranty, and contract claims.  The Court **DENIES** Marianna Industries' Motion to Dismiss without prejudice.  Within seven days of the entry of this Order, Cali-Curl **SHALL FILE** (1) its First Amended Complaint, revised to reflect only those amendments permitted by the Order, and (2) redlines showing the differences between the filed pleading and Cali-Curl's Original

Petition and between the filed pleading and Cali-Curl's proposed First Amended Complaint. Cali-Curl **MAY FILE** a motion for leave to further amend its pleading no later than twenty-one days after the entry of this Order. If Cali-Curl files such a motion, it must (1) attach its proposed amended pleading to the motion and (2) attach a redline to the motion showing the differences between the proposed amended pleading and the pleading the Court has ordered Cali-Curl to file.

 **SO ORDERED**.

 Signed October 3rd, 2023.

*Ed Kinkeade*

ED KINKEADE
UNITED STATES DISTRICT JUDGE